UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION, )
)
              Plaintiff, )
v. )
)
THOUGHT DEVELOPMENT, INC. and )
ALAN G. AMRON, )
)
              Defendants. )
_____)

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

### I. SUMMARY

1. The Commission brings this action against Thought Development, Inc. ("TDI") and its chairman Alan G. Amron (collectively, "Defendants") for violations of the registration provisions of the federal securities laws in connection with the offer and sale of TDI stock.

2. From approximately October 2010 until at least February 2012, Defendants directly, and through the services of Premiere Consulting, LLC, an unaffiliated company, offered and or sold unregistered offerings of TDI stock to at least 90 investors located throughout the United States.

3. Each of the Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c), by distributing stock in unregistered transactions for which no exemption applied, or by playing a necessary and substantial role in such distributions. The Commission respectfully requests that the Court enter: (a) a permanent injunction restraining and enjoining the Defendants from violating the federal securities laws;

and (b) an order directing Amron to pay a civil money penalty.

## II. DEFENDANTS AND RELEVANT ENTITY

### A. Defendants

4. TDI is a Delaware corporation formed in 2010 with its principal place of business in Miami Beach, Florida. It has never been registered with the Commission in any capacity and has not registered any offering of securities under the Securities Act or a class of securities under the Exchange Act.

5. Amron resides in Miami Beach, Florida. Amron is the founder and Chairman of TDI. Amron is not a registered representative or associated with a registered broker-dealer.

### B. Relevant Entity

6. Premiere Consulting, LLC is a Hollywood, Florida, limited liability company formed in May 2010. From July 2011 until February 2012, Premiere and its sales agents raised approximately $1.3 million from at least 90 investors from the sale of TDI stock.

## III. JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to Sections 20(b) and 20(d) of the Securities Act, 15 U.S.C. §§ 77t(b), and 77t(d).

8. The Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida, because many of the Defendants' acts and transactions constituting violations of the Securities Act occurred in the District. More specifically, TDI solicited investors and sold securities from its principal offices in Miami Beach. Moreover, the Defendants' sales agents offered and sold TDI stock from their offices located in Hollywood, Tamarac and Fort Lauderdale. Furthermore, Amron resides in Miami Beach, Florida.

9. The Defendants, directly and indirectly, made use of the means or instruments of transportation and communication in interstate commerce, or of a means or instrumentality of interstate commerce, or of the mails, in connection with conduct alleged in this Complaint.

## IV. FACTUAL ALLEGATIONS

### A. TDI Begins Soliciting Investors and Hires Premiere

10. Amron formed TDI in 2010 to develop and market a portfolio of products and inventions, including a laser-line system designed to mark first downs in professional and college football games. TDI states its laser-line system generates a green line on the field which is visible in the stadium to players, fans and on television. TDI represents that use of its technology would decrease the time used by officials to determine first downs and generate more time to be sold to television advertisers.

11. In 2010, Amron began soliciting investors to purchase shares of TDI to raise capital on behalf of the company.

12. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the TDI stock that Amron offered and sold and no exemption from registration existed with respect to these securities and transactions.

13. Also in 2010, an officer of TDI met with a managing partner of Premiere to discuss TDI's goal of raising investor funds. In 2010, the Premiere managing partner met with Amron to discuss potential options for the company going public.

14. Amron and the Premiere partner eventually agreed that TDI would hire Premiere to solicit investors to raise capital by selling TDI common stock. Although the arrangement between TDI and Premiere was not memorialized in writing, TDI allocated Premiere a block of restricted stock at 50 cents per share, which Premiere paid for on an ongoing

basis as it resold the stock to investors. Ultimately, Premiere paid approximately $200,000 to TDI pursuant to this agreement.

### B. Premiere Solicits Investors on Behalf of TDI

15. From no later than July 2011 through February 2012, Premiere, on behalf of TDI, solicited and or sold shares of TDI stock to at least 90 investors. Premiere did not provide some of these investors stock certificates from TDI's transfer agent.

16. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the TDI stock that Premiere offered and sold and no exemption from registration existed with respect to these securities and transactions.

17. Neither TDI nor Premiere provided investors with a TDI private placement memorandum. Furthermore, Premiere never determined whether investors were accredited and did not provide investors with information concerning the financial condition of the company or the attendant risks associated with investing in TDI.

18. Other than general company information available on TDI's website, neither Amron nor TDI provided any financial information or company risk disclosures to Premiere to be forwarded to investors during their solicitations. TDI never received any investor suitability/accredited investor forms and Amron did not instruct Premiere or its agents to determine potential investors' accreditation status.

19. The Defendants sold TDI stock to investors without inquiring or obtaining information as to whether they qualified as accredited investors. Some of these investors were, in fact, unaccredited.

20. In late 2011, TDI terminated its relationship with Premiere.

### C. TDI's Unregistered Rescission Offer

21.  In October 2012, Amron authorized TDI to make a rescission offer to approximately 76 investors – all of whom were investors known to TDI as identified by the company's transfer agent and company records. TDI offered those investors the opportunity to either rescind their shares or receive double the amount of shares.

22.  TDI sent those investors a private placement memorandum which stated, in part, that the company was conducting the rescission offer because it had become aware that its prior offer and sale of securities may have violated federal or state securities exemptions, rules or laws.

23.  However, many of the approximately 76 investors solicited by Amron and TDI were unaccredited and unsophisticated. Only two investors rescinded their shares, while the remaining investors opted to receive additional shares of TDI stock.

### COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act of 1933

24.  The Commission realleges and incorporates paragraphs 1 through 23 of this Complaint.

25.  No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint and no exemption from registration existed with respect to these securities and transactions.

26.  As described above, from approximately October 2010 through at least February 2012, the Defendants directly or indirectly: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in

5

effect; (b) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus of otherwise, securities as to which no registration statement has been filed.

27. By reasons of the foregoing, the Defendants violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests the Court:

### I.

### Declaratory Relief

Declare, determine and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, representatives and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act.

### III.

### Penalties

Issue an Order directing Amron to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d).

### IV.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

### V.

### Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

September 26, 2013

By: _____

Kevin B. Hart
Staff Attorney
S.D. Fla. Bar No. A5501875
hartk@sec.gov
Direct Dial: (305) 982-6321
Facsimile: (305) 536-4152

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300